IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ronald Windell Porterfield, #231233, | ) | C/A No. 0:08-00612-HMH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Warden S. Burton; Major T. Nettles; | ) | |
| and Lt. Lenneton, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STATEMENT OF THE CASE

This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

73.02(B)(2)(d) DSC on the defendants' motion for summary judgment. (Docket Entry 23.) Plaintiff

Ronald W. Porterfield, a state prisoner proceeding *pro se*, filed this action pursuant to 42 U.S.C.

§ 1983, claiming that his constitutional rights were violated by the defendants.  On June 14, 2008,

the defendants filed a motion for summary judgment.  By order filed June 16, 2008, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary

judgment dismissal procedure and the possible consequences if he failed to adequately respond to

the motion.  On July 18, 2008, Porterfield filed a motion requesting the motion for summary

judgment be held in abeyance until the court ruled on his second motion to compel.[1] (Docket Entry

29.)  Accompanying this motion was a document entitled "Plaintiff'[s] Memorandum in Support of

Motion for Summary Judgment on Motion of the Plaintiff."  (See Mem. in Support, Docket Entry

---

[1]Porterfield's Second Motion to Compel was subsequently ruled on during a hearing on
August 12, 2008.  Further, Porterfield's motion to extend the time to rule on the defendants' motion
for summary judgment was denied as moot.  (See Docket Entries 35, 36.)



29, Attachment 2.)  The court is interpreting this document to be a cross-motion by the plaintiff for summary judgment.  These motions are now before the court for a Report and Recommendation.[2]

## FACTS PRESENTED

Porterfield's Complaint essentially alleges that the defendants violated the Eighth Amendment to the United States Constitution by failing to protect him in connection with an incident that occurred on January 5, 2006 while he was incarcerated at Lieber Correctional Institution.  He alleges that on December 18, 2005, he was placed in the Special Management Unit ("SMU") after he was stabbed three times by an unknown inmate in the general population of Lieber.  (See Compl., Docket Entry 1 at 4.)  Porterfield alleges that Lt. Lenneton[3] was the supervisor of SMU and assigned Porterfield to a cell with inmate Huey Williams.  (Id.)  Porterfield further asserts that on January 5, 2006, while he was washing his face, Williams approached Porterfield from behind and cut his throat with a shard of glass.  (Id. at 5.)  Porterfield received medical care and was treated with six stitches.  (Id.)  Porterfield contends that defendants Warden S. Burton[4] and Major T. Nettles instructed officers to photograph Porterfield's injuries and clothes.  (Id.)  Williams was removed from Porterfield's cell and Porterfield was returned to SMU.  (Id.)  Thereafter, Porterfield was interviewed by Investigator Greg Antley.  Porterfield alleges that Investigator Antley

---

[2]Porterfield has filed numerous discovery requests during the pendancy of this matter.  Upon review of the filings and previous rulings of the court, there appear to be no outstanding discovery matters.  Accordingly, the motions for summary judgment are ready for ruling.

[3]Based on the filings with the court it appears that Lt. Lenneton, as referred to by Porterfield, is actually named Jack Langenstein.  (See Exhibits, Docket Entry 29, Attachment 4 at 5.)

[4]Based on the filings with the court it appears that the Warden's surname, referred to as "Burton" by Porterfield, is actually Burtt.  (See Docket Entry 13 at 1.)



informed him that since he was in protective custody, he should not have been placed in a cell with an inmate who was classified as a "security detention level inmate." (Id.)

Porterfield claims that the defendants failed to protect him and violated his constitutional rights by placing him in a cell with an inmate who allegedly had a different security classification than Porterfield. He seeks a declaration that the defendants violated his constitutional and state rights; a preliminary injunction ordering the defendants to turn over all documentation since the year 2000 of incidents similar to the one he alleged; and monetary damages.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.



The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir.1990).

## B.    Potential Liability of the Defendants

As an initial matter, Porterfield sued each of the individual defendants in their official and individual capacities.  Each of the defendants was an employee of the South Carolina Department of Corrections.  To the extent that the defendants are sued in their official capacities, they are immune from suit as they are treated as "arms of the State" in this capacity.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989).  To the extent that they are sued in their individual capacity, they are potentially subject to suit.

With respect to Defendant Burton, there is no evidence, nor even any allegation, that this defendant had anything to do with the events surrounding Porterfield's alleged injuries.  Rather, the record shows that Burton has been named as a defendant in this case solely because he was the Warden at Lieber during the relevant time period, and therefore had overall supervisory authority for that prison.  (See Docket Entry 1 at 3.)



The doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 & nn.1-2 (4th Cir. 1977). Therefore, unless Porterfield has set forth allegations of specific wrongdoing on the part of the Defendant Burton, Burton may not be held liable for the acts of others absent an official policy or custom for which he was responsible and which resulted in illegal action. See generally Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F. Supp. 426, 428-29 (E.D.N.C.1974), aff'd, 526 F.2d 591 (4th Cir.1975); Stubb v. Hunter, 806 F. Supp. 81, 82-83 (D.S.C.1992); Joyner v. Abbott Laboratories, 674 F. Supp. 185, 191 (E.D.N.C.1987); see also Slakan v. Porter, 737 F.2d 368, 375-76 (4th Cir.1984). Porterfield has made no claim of any official policy or custom of Defendant Burton which resulted in the allegedly unconstitutional conduct at issue here. To the contrary, Porterfield specifically alleges that the other defendants' actions were in direct violation of prison policy. Therefore, Defendant Burton is entitled to summary judgment.

## C.    Failure to Protect

To proceed against the remaining defendants with his failure to protect claim under the Eighth Amendment, Porterfield must demonstrate (1) a serious injury and (2) a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the second prong,[5] an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Id. A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate

---

[5]The seriousness of Porterfield's injury does not appear to be in dispute. (See, e.g., Antley Aff., Docket Entry 23, Attachment 3.)



indifference requires actual knowledge and disregard of a substantial risk of serious injury); Washington v. La Porte County Sheriff's Dep't, 306 F.3d 515 (7th Cir. 2002) (same). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

In support of their motion for summary judgment, the defendants provided several affidavits and Investigator Antley's report. The defendants attest that they had no knowledge of any specific threat that Williams posed to Porterfield. (See Docket Entry 23, Attachments 2-5.) Investigator Antley attests that he determined that "Williams had suddenly 'flipped out'" and attacked Porterfield and that, further, there was no forewarning that Williams would attack Porterfield. (Antley Aff., Docket Entry 23, Attachment 3 at 2.) Moreover, Investigator Antley's report indicates that there were no problems between Williams and Porterfield prior to the January 5 incident. (Id. at 9.) Porterfield has presented no evidence to contest these sworn statements or to show that either Nettles or Lenneton had any reason to infer that placing Porterfield in a cell with Williams would present a substantial risk of harm to Porterfield.[6] See Farmer, 511 U.S. at 837. He merely argues that the defendants violated a prison policy by placing Porterfield and Williams in the same cell based on his allegation that they had different classification levels. (See Mem. in Support, Docket Entry 29, Attachment 2.) This allegation does not rise to the level of an Eighth Amendment claim. See Fuller v. County of Charleston, 444 F. Supp. 2d 494, 498 (D.S.C. 2006) ("Absent some evidence that

---

[6]While Porterfield was previously attacked the month before, causing him to be moved to SMU, there is no indication that these incidents are related such that the defendants would have actual knowledge that Williams posed a substantial risk to Porterfield. In fact, Porterfield himself states in his Complaint that the January 5 incident is unrelated to the incident that occurred on December 18, 2005. (See Compl., Docket Entry 1 at 5.)



prison officials were subjectively aware that this inmate was likely to attack Plaintiff, the mere fact that the attacking inmate was classified as potentially violent cannot constitute deliberate indifference.").

Therefore, viewed in the light most favorable to Porterfield, the record shows no evidence that the defendants had knowledge of any facts tending to demonstrate that Williams posed a substantial risk to Porterfield.  Accordingly, Porterfield's claims that Defendants Nettles and Lenneton violated his Eighth Amendment rights fail as a matter of law.

**D.    Other Claims**

To the extent that Porterfield claims that the defendants failed to follow department policy with respect to cell assignment, such an allegation, even if true, would not by itself give rise to a constitutional claim under 42 U.S.C. § 1983.  See Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (stating that violations of prison policies which fail to reach the level of a constitutional claim are not actionable under § 1983). "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).  Further, it is well settled that inmate classification is within the discretion of prison officials.  See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) ("South Carolina law does not create a constitutionally protected liberty interest in [prison] classifications . . . ."); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978) ("[T]he classifications and work assignments of prisoners in [state penal] institutions are matters of prison administration, within the discretion of the prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of such discretion.").



## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary

judgment (Docket Entry 23) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 16, 2008
Columbia, South Carolina

*The parties' attention is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).